**ATTORNEYS FOR** Defendants
Sedgwick Claims Management Services, Inc.,
International Paper Company and William L. Webb

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VINCENT LUPPINO, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 08-5315 |
| | : | |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., INTERNATIONAL PAPER COMPANY, WILLIAM L. WEBB, as an individual and as an agent for Sedgwick Claims Management Services, Inc., and for International Paper Company, and JOHN DOES I-X, fictitiously named agents of defendants Sedgwick and/or International Paper who breached a duty to plaintiff, | : : : : : : | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | : | |

# Table of Contents

Table of Contents   ...................................   ii

Table of Authorities  ..................................   iv

Statement of the Case ..................................   1

Statement of Undisputed Facts  ........................   4

Summary of Argument  ..................................   7

Argument                ..................................   7

I.    Plaintiff's Claim for ERISA Plan Benefits
      Should be Dismissed Based on Plaintiff's Failure
      to Exhaust his ERISA Plan Remedies . . . . . . . . .7

II.   Contrary to Plaintiff's Contention, Wausau Benefits'
      Erroneous Decision not to Offset his Long Term
      Disability Benefits by his Workers' Compensation
      Award was not a Final Decision Made by the Plan
      Administrator, and Plaintiff Cannot Rely on
      Wausau Benefits' Error When it Failed to Offset
      his Long Term Disability Benefits by his Workers'
      Compensation Award . . . . . . . . . . . . . . . . 10

      A.   Wausau Benefits' Decision not to Offset
           Plaintiff's Long Term Disability Benefits by
           his Workers' Compensation Award was not a Final
           Decision Made by the Plan Administrator . . . 10

      B.   Plaintiff Cannot State a Claim for Equitable
           Estoppel under ERISA . . . . . . . . . . . . 15

           1.   Material Misrepresentation . . . . . . . 16

           2.   Reasonable Detrimental Reliance . . . . .17

                a.   Plaintiff Cannot Demonstrate Reasonable
                     Reliance as a Matter of Law  . . . .17

                b.   Plaintiff Cannot Demonstrate Reasonable
                     Reliance as a Matter of Fact . . . .21

           3.   "Extraordinary Circumstances" . . . . . .22

III. Plaintiff's Remaining Arguments are Based on a Flawed
     Understanding of ERISA and/or Distortions of the
     Undisputed Record Evidence . . . . . . . . . . . 25

     A.   Plaintiff's Demand for a "Heightened Standard
          of Review" is Erroneous as a Matter of Law
          and Fact . . . . . . . . . . . . . . . . . .25

          1.   Alleged Conflict of Interest. . . . . . .26

          2.   Alleged "Procedural Irregularities" . . .27

          3.   Alleged Bad Faith . . . . . . . . . . .32

     B.   Plaintiff's Discussion of the So-Called
          Disability "Onset Date" is Irrelevant . . . . 34

     C.   Plaintiff's Resort to the Doctrine of *Contra
          Proferentem* is Unavailing . . . . . . . . . 35

     D.   Plaintiff's Laches "Defense" is Without
          Merit . . . . . . . . . . . . . . . . . . . 36

Conclusion . . . . . . . . . . . . . . . . . . . . . . .38

## Table of Authorities

### Cases

*Aetna Health Inc. v. Davila,* 542 U.S. 200,
124 S. Ct. 2488 (2004)  ...............................   13

*Berger v. Edgewater Steel Co.,* 911 F.2d 911
(3rd Cir. 1990), *cert. denied, 499 U.S. 920, 111
S. Ct. 1310 (1991)*  .................................    9

*Carden v. Aetna Life Ins.,* 559 F.3d 256
(4th Cir. 2009)        ................................   36

*Curcio v. John Hancock Mutual Life Ins. Co.,*
33 F.3d 226 (3rd Cir. 1994)  .........................   15

*Degan v. Ford Motor Co.,* 869 F.2d 889
5th Cir. 1989)         ................................   20

*Fischer v. Philadelphia Electric Co.,* 994 F.2d 130
(3rd Cir. 1993)        ............................... 15, 16

*Gluck v. Unisys Corp.,* 960 F.2d 1168
(3rd Cir. 1992)        ................................   37

*Gramm v. Bell Atlantic Management Pension Plan,*
983 F. Supp. 585 (D.N.J. 1997)  ...................... 22, 23

*Harrow v. Prudential Ins. Co.,* 279 F.3d 244
(3rd Cir. 2002)        ...............................  8, 9

*Hein v. FDIC*, 88 F.3d 210 (3rd Cir. 1996) . . . . . 14, 15, 19

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*
213 F.3d 124 (3rd Cir. 2000)  ........................   37

*Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155
(3rd Cir. 1990)        ................................   24

*In re Unisys Corp. Retiree Medical Benefits,*
58 F.3d 896 (3rd Cir. 1995)  ......................... 18, 19

*Jordan v. Federal Express Corp.,* 914 F. Supp. 1180
(W.D. Pa. 1996)        ...............................   22

*Klimowicz v. Unum Life Ins. Co.,* 296 Fed. Appx. 248
(3rd Cir. 2008)   .................................   37

*Kosiba v. Merck & Company*, 384 F.3d 58
(3rd Cir. 2004)   ................................. 28, 29

*Kurz v. Philadelphia Electric Co.*, 96 F.3d 1544
(3rd Cir. 1996), *cert. denied,* 522 U.S. 913,
118 S. Ct. 297 (1997)   ............................. 22, 24

*Law v. Ernst & Young*, 956 F.2d 364 (1st Cir. 1992)   ....   20

*Mello v. Sara Lee Corp.*, 431 F.3d 440 (5th Cir. 2005)   .   19

*Metropolitan Life Ins. C. Glenn*, 128 S. Ct. 2343
(2008)   ................................. 26, 27

*Ott v. Litton Industries,* 2005 WL 1215958
(M.D. Pa. 2009)   .................................   32

*Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377
(3rd Cir. 2000), *abrogated on unrelated grounds,*
562 F.3d 522 (3rd Cir. 2009)   ......................... 8, 26

*Slice v. Sons of Norway*, 34 F.3d 630 (8th Cir. 1994)   ..   20

*Sprague v. GMC*, 133 F.3d 388 (6th Cir. 1998),
*cert. denied,* 524 U.S. 923, 118 S. Ct. 2312 (1998)   ....   20

*Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517
(9th Cir. 1993)   .................................   20

*Weldon v. Kraft, Inc.*, 896 F.2d 793 (3rd Cir. 1990)   ...   8

*Zipf v. AT&T*, 799 F.2d 889 (3rd Cir. 1986)   ............   8

## Statutes & Court Rules

29 U.S.C. §1001   .................................   1

29 U.S.C. §1132   ................................. 8, 10

29 C.F.R. §2560.503-1   ................................. 8, 31

Defendants   Sedgwick   Claims   Management   Services,   Inc. ("Sedgwick"), International Paper Company ("International Paper") and William Webb ("Webb"), state as follows in opposition to plaintiff's motion for partial summary judgment:

### Statement of the Case

On October 30, 2008, plaintiff filed his Complaint in the above-captioned action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001, et seq. ("ERISA"), naming as   defendants   International   Paper   Company,   Sedgwick   Claims Management Services, Inc. and William Webb, a benefits analyst for International Paper.    At issue is an offset being taken against the long term disability benefits plaintiff is receiving from the International Paper Company Long-Term Disability Plan ("IP LTD Plan") based on workers' compensation benefits awarded to plaintiff.    In October 2004, the IP LTD Plan's former claims administrator, Wausau Benefits, Inc., erred when it informed plaintiff's legal counsel that no offset would be taken.    That

error was corrected in December 2007 and plaintiff contests that offset here.

In Count I of his Complaint, plaintiff asserts a claim for ERISA plan benefits pursuant to 29 U.S.C. §1132(a)(1)(b). In Count II of his Complaint, plaintiff asserts a claim for alleged breach of fiduciary duty pursuant to ERISA and 29 U.S.C. §1132. In Count III of plaintiff's Complaint, plaintiff asserts a state-law claim for alleged breach of contract. See Dkt. Entry 1.

On October 26, 2009, defendants filed a Motion for Summary Judgment in which they demonstrated that each of plaintiff's claims fail as a matter of law. See Dkt. Entry 20.[1] Count I of plaintiff's Complaint for ERISA plan benefits should be dismissed based on plaintiff's failure to exhaust his ERISA plan remedies. Id. Moreover, even if it were properly before the Court, plaintiff cannot sustain a claim in Count I of his Complaint for equitable estoppel under ERISA. Id. He cannot demonstrate a cognizable material representation; he cannot demonstrate reasonable and detrimental reliance because the representation on which he relies is contrary to the express terms and provisions of the IP LTD Plan; and he cannot identify the "extraordinary circumstances" necessary to sustain an equitable estoppel claim. Id.

---

[1]Defendants incorporate herein by reference pursuant to Fed. R. Civ. P. 10(c) its Motion for Summary Judgment and materials filed in support thereof. See Dkt. Entry 20.

Count II of plaintiff's Complaint should be dismissed based on his failure to exhaust his plan remedies and the well-settled authority that a plaintiff cannot state a claim for breach of fiduciary duty under ERISA when he has an adequate remedy (and indeed has asserted a claim) under 29 U.S.C. §1132 for denial of benefits. *Id.* In addition, plaintiff cannot state a claim in Count II against defendant Webb because he is not a plan fiduciary. *Id.* Count III of plaintiff's Complaint should be dismissed because his state-law claim for alleged breach of contract is pre-empted by ERISA. *Id.*

On October 27, 2009, plaintiff filed a motion for summary judgment as to Count I of his Complaint; his denial of benefits claim pursuant to ERISA. *See* Dkt. Entries 22, 23. According to plaintiff, "[t]he crux of [his] §1132(a)(1)(B) denial of benefits claim is that Defendants are powerless to overturn Wassau's [sic] 2004 decision not to take an offset, because it was a final decision pursuant to § 6.04 of the Plan." *See* Vincent Luppino's Memorandum of Law in Support of his Motion for Summary Judgment ("Plaintiff's Memorandum"), p. 9 (Dkt. Entry 23). Plaintiff also asks the Court to "set a trial for determination of whether

defendants also breached a fiduciary duty and for issues of damages and attorney's fees." *See* Dkt. Entry 22.[2]

In support of his motion for partial summary judgment, plaintiff filed his own certification and two additional certifications executed by Elise Rossbach, Esq., his legal counsel, and Rose Luppino, his wife. *See* Dkt. Entry 23. On November 11, 2009, defendants filed a Motion to Strike Plaintiff's Certifications for Violating Local Rule 7.2(a), and for Attorneys' Fees and Sanctions. *See* Dkt. Entry 26. Pursuant to L. Civ. R. 7.2(a), affidavits "shall be restricted to statements of fact" and "[a]rguments of the facts and the law shall not be contained in affidavits." The Court expressly directs in the Rule that "[l]egal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both." L. Civ. R. 7.2(a). Each of the certifications filed by and on behalf of plaintiff violate this Local Rule.

## Statement of Undisputed Facts

Plaintiff Vincent Luppino is a former supervisory employee at International Paper's Moonachie, New Jersey facility. *See* Defendants' Statement of Material Facts Not in Dispute Pursuant

---

[2]Plaintiff apparently has abandoned the state-law contract claim he asserted in Count III of his Complaint. *See* Dkt. Entries 22 & 23.

to L. Civ. R. 56.1(a)(hereinafter, "Facts, ¶__") at ¶1 (Dkt. Entry 20) and which defendants incorporate herein by reference pursuant to Fed. R. Civ. P. 10(c). Plaintiff suffered a work-related injury in March 2001 and was awarded long term disability benefits pursuant to the International Paper Company Long-Term Disability Plan (the "IP LTD Plan") effective December 1, 2001. See Facts, ¶¶15-18, 28 (Dkt. Entry 20).

The IP LTD Plan is an employee welfare benefit plan maintained pursuant to and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001, et seq. ("ERISA"). See Facts, ¶¶3-4 (Dkt. Entry 20). Pursuant to the terms of the IP LTD Plan, plaintiff's long term disability benefits were subject to offset by any other income benefits he would have received, such as workers' compensation and Social Security disability income benefits. See Facts, ¶¶11-14 (Dkt. Entry 20).

In March 2004, a Judge of Compensation of the New Jersey Department of Labor entered an Order Approving Settlement, pursuant to which plaintiff was to receive permanent disability benefits of $186,165, which comprised 315 weekly payments of $591 per week for the period April 10, 2002 through April 23, 2008, and second injury fund benefits of $591 commencing on April 24, 2008. See Facts, ¶28 (Dkt. Entry 20). In October 2004, Wausau Benefits, Inc., which then was serving as the IP LTD Plan's third-party claim administrator, mistakenly informed plaintiff

(through his attorney, Elise Rossbach, Esq.) that his long term disability benefits would not be offset by his workers' compensation award. *See* Facts, ¶¶29-33 (Dkt. Entry 20).

Effective April 1, 2006, defendant Sedgwick replaced Wausau Benefits as the LTD Plan's claim administrator. *See* Facts, ¶¶8-9 (Dkt. Entry 20). During its periodic (and appropriate) review of plaintiff's long term disability file in late 2007, Sedgwick discovered that no offset had been taken for the workers' compensation benefits. *See* Facts, ¶¶34-47 (Dkt. Entry 20). Sedgwick contacted International Paper on November 29, 2007, inquiring as to whether the offset should be taken at that time. *See* Facts, ¶48 (Dkt. Entry 20). On November 30, 2007, International Paper informed Sedgwick that the offset should be taken. *See* Facts, ¶48 (Dkt. Entry 20).

On December 3, 2007, Sedgwick informed plaintiff that his long term disability benefits were subject to offset. *See* Facts, ¶49 (Dkt. Entry 20). Beginning in December 2007, plaintiff's long term disability benefits were reduced by $591 per week (that is, $2,561 per month). *See* Facts, ¶¶49-53 (Dkt. Entry 20). Beginning in April 2008, plaintiff's monthly long term disability benefit has been reduced by $2,000 per month for purposes of

recovering the overpayment which occurred prior to December 2007.[3]

## Summary of Argument

Plaintiff is not entitled to judgment on his claim for ERISA plan benefits. As demonstrated below, plaintiff's claim should be dismissed based on his conscious disregard for, and failure to exhaust his ERISA plan remedies. Plaintiff also cannot state a claim for equitable estoppel or otherwise rely on Wausau Benefits' error when it failed to offset his long term disability benefits by his workers' compensation award. Plaintiff's arguments to the contrary are based on a fundamental misunderstanding of ERISA, a flawed reading of the IP LTD Plan documents and distortions of the undisputed record evidence.

## Argument

## I.   Plaintiff's Claim for ERISA Plan Benefits Should be Dismissed Based on Plaintiff's Failure to Exhaust his ERISA Plan Remedies.

Plaintiff alleges that he has been denied benefits under the IP LTD Plan, which is an employee welfare benefit plan governed by ERISA, and he seeks relief pursuant to 29 U.S.C.

---

[3]During the course of this litigation, an issue has arisen regarding whether the monthly reduction in plaintiff's long term disability benefits of $2,561 should have remained in place beyond April 2008. See Facts, ¶54 (Dkt. Entry 20). Sedgwick believes that the reduction should have remained in place. Id. The IP LTD Plan is evaluating the issue. Id. For now, however, plaintiff's benefits are being offset by $2,000 per month rather than $2,561 per month. Id. at 53.

7

§1132(a)(1)(b). *See* Complaint, ¶¶37-38 (Dkt. Entry 1). However, prior to seeking judicial review, plaintiff was required to present his claim to the ERISA plan and exhaust his plan remedies. The law is well-settled that, "[e]xcept in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies under the plan." *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3rd Cir. 1990). As the Third Circuit stated in *Zipf v. AT&T*, 799 F.2d 889, 892 (3rd Cir. 1986), "[w]hen a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress . . . assigned the primary responsibility for evaluating claims for benefits." *See also Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 249-50 (3rd Cir. 2002). This requirement ensures that a full and complete record can be established, on which the ERISA Plan then can conduct a full and fair review applying the terms and provisions of the Plan. *See Zipf*, 799 F.2d at 892; *Harrow,* 279 F.3d at 249-50; 29 C.F.R. §2560.503-1.[4]

---

[4]If plaintiff had pursued and exhausted his ERISA plan remedies, any adverse benefit decision would be subject to the abuse of discretion standard of review because the IP LTD Plan grants to the Plan Administrator or his designees broad authority and discretion to interpret and apply the Plan provisions. *See* Facts, ¶6 (Dkt. Entry 20) and *compare to Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 392-93 (3rd Cir. 2000)(applying the discretionary standard of review to the plan administrator's

Here, it is undisputed that plaintiff failed to exhaust his ERISA plan remedies; in fact, months before filing suit, he ignored an invitation to do so. Mr. Webb, a benefits analyst for International Paper, specifically invited plaintiff's former legal counsel to file a claim and provided his former legal counsel all of the information and documents he would need to perfect a claim. *See* Facts, ¶58 (Dkt. Entry 20). Neither plaintiff nor his counsel ever filed a claim. *See* Facts, ¶59 (Dkt. Entry 20). Plaintiff offers no explanation or excuse for his failure to file a claim, and plaintiff's claim in Count I of his Complaint for ERISA plan benefits, therefore, should be dismissed for failure to exhaust his ERISA plan remedies. *See Harrow,* 279 F.3d at 252.[5]

---

claim decision based on similar language to that found in the IP LTD Plan).

[5]A plaintiff may be excused from exhausting ERISA plan remedies if it would be futile to do so, *see Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3rd Cir. 1990), but, to justify this exception, the plaintiff has the burden to make a "clear and positive showing of futility." *Harrow,* 279 F.3d at 249. The plaintiff "must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Id.* at 250 (citations omitted). Plaintiff here has not even attempted to satisfy this applicable multi-factor standard. *Id.*

9

II.  **Contrary to Plaintiff's Contention, Wausau Benefits' Erroneous Decision not to Offset his Long Term Disability Benefits by his Workers' Compensation Award was not a Final Decision Made by the Plan Administrator, and Plaintiff Cannot Rely on Wausau Benefits' Error When it Failed to Offset his Long Term Disability Benefits by his Workers' Compensation Award.**

A.  **Wausau Benefits' Decision not to Offset Plaintiff's Long Term Disability Benefits by his Workers' Compensation Award was not a Final Decision Made by the Plan Administrator.**

According to plaintiff, "[t]he crux of [his] §1132(a)(1)(B) denial of benefits claim is that Defendants are powerless to overturn Wassau's [sic] 2004 decision not to take an offset, because it was a final decision pursuant to § 6.04 of the Plan." *See* Plaintiff's Memorandum, p. 9 (Dkt. Entry 23). Plaintiff contends that the IP LTD Plan Administrator delegated to Wausau Benefits the responsibility for making final decisions regarding benefit offsets. *Id.* at 16. According to plaintiff, he is "in possession of documents which irrefutably show that Wassau [sic] made a determination in 2004 that no WC offset applied to Plaintiff's claim for benefits." *Id.* at 18. He asserts that this is a "final decision pursuant to § 6.04 of the Plan," *id.* at 9, and that "defendants admit that plaintiff was notified of the decision that an offset against the Worker's Compensation award was not going to be taken." *Id.* at 20. He contends that "[t]he decision against the offset was a conscious and deliberate

10

decision by the **Plan Administrator** . . . ." *Id.* at 9 (emphasis added).  Plaintiff's arguments are wholly without merit.

First, plaintiff's argument that the failure to take the offset "was a conscious and deliberate decision by the **Plan Administrator**" or "**Defendants,**" *id.* at 27, is contrary to the record.  It is undisputed that the offset error was made by Wausau Benefits, which was a third-party vendor retained by International Paper to assist in the administration of the IP LTD Plan.  *See* Facts, ¶¶8, 28-33, 34-47 (Dkt. Entry 20).  Contrary to plaintiff's representation, Wausau Benefits was not the "Plan Administrator." *Id.* at ¶¶5-7, 8.  International Paper's Senior Vice President - Human Resources is the IP LTD Plan Administrator, and he has delegated to the Disability Review Committee full discretion and authority to review claims for disability benefits and interpret and apply the IP LTD Plan's provisions. *Id.* at ¶¶5-7.

Second, contrary to plaintiff's contention, Wausau Benefits' offset error was not a "final decision pursuant to § 6.04 Plan." *See* Plaintiff's Memorandum, p. 9 (Dkt. Entry 23).  Based on the express text of that provision, only the "Plan Administrator" can make a final decision, *see* IP LTD Plan at 10, Article 6.04 (Steen Cert., Exh. 4), and only the Plan Administrator has the authority to interpret the IP LTD Plan's provisions, including the Plan's

11

coordination of benefits, offset provision.  *See* Facts, ¶¶5-14 (Dkt. Entry 20).  According to that provision:

> "The **Plan Administrator** shall have full power, authority and discretion to enforce, construe, interpret and administer the Plan.  All decisions and determinations of the **Plan Administrator** with respect to any matter hereunder shall be conclusive and binding on Covered Employees and all other interested parties."

*See*  IP  LTD  Plan  at  10,  Article  6.04  (Steen  Cert.,  Exh. 4) (emphasis added).

Furthermore, it also is undisputed that no "final decision" has been made because plaintiff never filed a claim for plan benefits.  *See* Webb Deposition at p. 67-73, 76-77 (Steen Supp. Cert., Exh. 2).[6]  Plaintiff's argument to the contrary ignores the plain text of the IP LTD Plan and the undisputed testimony.

Plaintiff contends that this view is "bizarre" and based on some  "twisted  interpretation"  of  the  plan  documents.  *See* Plaintiff's Memorandum, p. 21 (Dkt. Entry 23).  Plaintiff is incorrect.  When his long term disability benefits were offset by his Social Security disability income benefits in 2004, plaintiff could have filed a claim contesting that decision; he did not. When  his  long  term  disability  benefits  were  offset  by  his workers'  compensation  benefits  in  2007,  plaintiff  could  have

---

[6]Contrary  to  plaintiff's  assertions,  *see*  Plaintiff's Memorandum, p. 24 (Dkt. Entry 23), Mr. Webb's testimony regarding this issue is entirely consistent with the IP LTD Plan documents and ERISA claim regulations which govern how a claim is presented and who has the authority to make a final claim decision.

filed a claim contesting that decision; he did not. Plaintiff's belief that somehow he has been disadvantaged and that the IP LTD Plan's view of the claim procedure is "bizarre" or "twisted" is based on his own inaction and a flawed understanding of the IP LTD Plan's and ERISA's claim procedures.[7]

Third, plaintiff's statement that he is "in possession of documents which irrefutably show that Wassau [sic] made a determination in 2004 that no WC offset applied to Plaintiff's claim for benefits," see Plaintiff's Memorandum, p. 18 (Dkt. Entry 23), and his assertion that "defendants admit that plaintiff was notified of the decision that an offset against the Worker's Compensation award was not going to be taken," id. at 20, are utterly irrelevant. It is undisputed that Wausau Benefits made a decision not to offset plaintiff's long term disability benefits by his workers' compensation award. See Facts, ¶¶33 (Dkt. Entry 20). It also is undisputed that Wausau Benefits notified plaintiff in 2004, through his legal counsel, that his long term disability benefits would not be offset by the

---

[7]The Supreme Court's decision in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S. Ct. 2488 (2004), does not stand for the proposition for which plaintiff cites it. See Plaintiff's Memorandum, p. 23 (Dkt. Entry 23). That case deals with ERISA preemption and does not have anything to do with the circumstances of the offset issue in this case.

13

workers' compensation benefits he received.  *Id.* at  ¶33.[8]
Defendants have never denied these facts and the pages of
briefing plaintiff devotes to these arguments are an irrelevant
distraction.

The issue is whether defendants are bound to Wausau
Benefits' error, and there is a whole body of law devoted to this
issue - the law of equitable estoppel.  Plaintiff appears to
believe that the IP LTD Plan (and all of the defendants) are
bound by whatever Wausau Benefits may have said at any time to
any plan participant or beneficiary.  This is not the law.  For
if it were, the only question any court would be required to ask
would be:  "Did the representation occur?"  If it did, the
participant or beneficiary would prevail.  Of course, this is not
the case.  *See, e.g., Hein v. FDIC,* 88 F.3d 210 (3rd Cir.
1996)(holding that the participant could not state a claim even
though the retirement plan's **actuary** misrepresented the
participant's entitlement to an early retirement benefit).

Finally, plaintiff's argument also is illogical.  Wausau
Benefits made a mistake.  *See* Facts, ¶46 (Dkt. Entry 23).

---

[8]It also is undisputed that International Paper, the IP LTD
Plan and the IP LTD Plan Administrator did not learn about Wausau
Benefits' error until November 29, 2007.  *See* Defendants'
Supplemental Statement of Material Facts Not in Dispute Pursuant
to L. Civ. R. 56.1(a)(hereinafter "Supplemental Facts"), ¶¶1-6,
which is being filed contemporaneously herewith.  Any suggestion
plaintiff makes to the contrary misrepresents the undisputed
record.

Sedgwick subsequently discovered that mistake, and as International Paper has testified, "[i]f a mistake is discovered, it should be corrected." *Id.* at ¶47. On plaintiff's logic, if Wausau Benefits had made a mistake in the calculation of his monthly long term disability benefit and paid him **too little** (rather than too much) and Sedgwick subsequently discovered that mistake three years later and decided plaintiff was entitled to more, neither Sedgwick nor the IP LTD Plan would be able to correct that mistake and pay him more money because, on plaintiff's theory and logic, Wausau Benefits' original mistaken calculation would have been a "final decision" made by the "Plan Administrator" which could not subsequently be corrected. Of course, this result is absurd and shows just how result oriented plaintiff's theory of this case is.

**B.  Plaintiff Cannot State a Claim for Equitable Estoppel Under ERISA, or otherwise Rely on Wausau Benefits' Error When it Failed to Offset his Long Term Disability Benefits by his Workers' Compensation Award.**

Rather, to sustain a claim for equitable estoppel, plaintiff must demonstrate: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *See Curcio v. John Hancock Mutual Life Ins. Co.*, 33 F.3d 226, 235 (3rd Cir. 1994). Plaintiff's "reliance on a misrepresentation 'must have been reasonable in that the party claiming the estoppel did not know

15

nor should it have known that its adversary's conduct was misleading.'" *Hein*, 88 F.3d at 210 (3rd Cir. 1996). Here, plaintiff cannot establish any of these elements.

### 1. Material Misrepresentation

At the outset, Wausau Benefits' verbal report to plaintiff's attorney, Elise Rossbach, is not the type of alleged material misrepresentation generally required to state a claim for equitable estoppel – that is, a representation that "would mislead a reasonable employee *in making an adequately informed decision about [an ERISA plan benefit]*." *See Fischer v. Philadelphia Electric Co.*, 994 F.2d 130, 135 (3rd Cir. 1993)(emphasis added). Here, plaintiff made absolutely no benefit decision based on what Wausau Benefits told his lawyer. He did not forego any plan benefit; he did not make any employment decision; he did not make any decision that effected his status as an employee or plan participant. *Id.*

Rather, the only alleged decision plaintiff made based on Wausau Benefits' telephone conversation with his lawyer occurred two years after that telephone conversation when he decided to build a new house. *See* Facts, ¶¶60-67 (Dkt. Entry 20). This is not the type of decision which generally forms the basis of an ERISA equitable estoppel claim. *See Fischer, 994 F.2d at 135* (analyzing alleged misrepresentations about pension benefits on which plan participants are making early retirement decisions);

16

*Hein*, 88 F.3d at 221-22 (the Third Circuit rejecting an ERISA estoppel claim arising from alleged misrepresentations regarding the plaintiff's eligibility for early retirement benefits).

Interestingly, the plaintiff alleged in *Hein* that, in reliance on the Bank's representations, "he entered into a contract for substantial renovations to a home in the Adirondacks, where he and his wife plan to spend their retirement." *Hein*, 88 F.3d at 222. This is precisely the same alleged reliance interest on which plaintiff relies in the instant case, *see infra* at 20-22, and, despite this alleged reliance, the Third Circuit rejected the plaintiff's equitable estoppel claim.

### 2.   Reasonable Detrimental Reliance

#### a.   Plaintiff Cannot Demonstrate Reasonable Detrimental Reliance as a Matter of Law.

In addition, the plain language of the IP LTD Plan precludes plaintiff's claim and he, therefore, cannot demonstrate that he reasonably relied on Wausau Benefits' statement to his lawyer. *See Curcio*, 33 F.3d at 237. According to the express terms of the IP LTD Plan, "other sources of disability income," including, but not limited to Social Security disability benefits and workers' compensation benefits, "reduce the long-term disability benefits payable under the Plan." *See* Facts, ¶11 (Dkt. Entry 20). If disability payments from other sources are delayed and

17

paid retroactively in a lump-sum amount, the participant is required to reimburse the Plan for the amount of any overpayment, *see id.* at ¶12, and "[w]henever a payment has been made by the Plan, including erroneous payments, in a total amount in excess of the amount payable under the Plan, irrespective of to whom paid, the Plan shall have the right to recover such payments, to the extent of the excess from the person to or for whom the payment was made." *Id.* at ¶13. The IP LTD Plan "shall have the right to reduce future payments payable to or on behalf of such individual by the amount of the erroneous or excess payment." *Id.* at ¶14.

Here, there can be no dispute that, based on the express plan language, the IP LTD Plan requires the offset at issue and that Wausau Benefits' failure to reduce plaintiff's long term disability benefits based on his receipt of workers' compensation benefits was a mistake. *See id.* at ¶¶11-14, 34-54. Indeed, this is the very coordination of benefits, offset language on which plaintiff repaid the IP LTD Plan for the Social Security disability income benefits he received. *See id.* at ¶¶23-27. As such, plaintiff cannot state an ERISA estoppel claim.

The Third Circuit's decision in the case of *In re Unisys Corp. Retiree Medical Benefits,* 58 F.3d 896, 902 (3rd Cir. 1995), is instructive. There, a group of retirees sought to recover post-retirement medical benefits provided pursuant to an ERISA

welfare benefit plan. The district court found that the company had misinformed the retirees regarding the duration of their medical benefits; "[i]ndeed, the district court found that the company engaged in a 'systematic campaign of confusion' which led employees to believe that their benefits were to continue for life." *Id.* at 907 n.20. Nevertheless, the district court and the Third Circuit rejected the plaintiffs' ERISA estoppel claims due to the plain language of the ERISA plan at issue "by which [the company] could terminate its retiree medical benefit plans." *Id.* The plaintiffs could not base an ERISA estoppel claim on a representation which contradicts the terms of the ERISA plan at issue because in such a case the reliance cannot be "reasonable" as a matter of law. *Id.* at 907-08.

Similarly, in *Hein*, 88 F.3d at 210, a former employee (and his wife) filed a claim for "unreduced early retirement benefits despite the fact that he [did] not qualify for such benefits under the plain language of the relevant company retirement plan." The plaintiffs relied in part on "a report provided to him by a Plan actuary indicating his entitlement to unreduced early retirement benefits." *Id.* at 221. The Third Circuit rejected the plaintiff's ERISA equitable estoppel claim because, "[i]n the face of such clear evidence" from the plan documents that the former employee was not entitled to the unreduced

pension benefit, the plaintiffs could not establish that their reliance was reasonable.  *Id.* at 222.[9]

Here, plaintiff relies on Wausau Benefits' representation to his attorney and that representation is contrary to the terms and provisions of the IP LTD Plan.  *See* Facts, ¶¶11-14, 34-54 (Dkt. Entry 20).  As such, it cannot form the basis for an ERISA equitable estoppel claim.  *See   In re Unisys Corp. Retiree Medical Benefits,* 58 F.3d at 907-08; *Hein,* 88 F.3d at 210.  *See also Mello v. Sara Lee Corp.,* 431 F.3d 440, 444 (5th Cir. 2005)(stating that a party's reliance "can seldom, if ever, be reasonable or justifiable" if it is inconsistent with the clear and unambiguous terms of the ERISA benefit plan at issue); *Law v. Ernst & Young,* 956 F.2d 364 (1st Cir. 1992)(holding that the participant could not sustain an ERISA-estoppel claim because the effect of the alleged misrepresentation would be to modify the terms of the applicable ERISA benefit plan); *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517 (9th Cir. 1993)(holding that ERISA-estoppel claim not cognizable to permit recovery of pension benefit that is contrary to the terms of the ERISA pension plan); *Slice v. Sons of Norway,* 34 F.3d 630 (8th Cir. 1994)(same); *Degan v. Ford Motor Co.,* 869 F.2d 889, 895 (5th Cir. 1989)(recognizing that a mistake regarding an ERISA plan term

___

[9]The "effect" of the alleged misrepresentation in *Hein* was to reduce the plaintiffs' monthly pension benefit from $2,943.44 per month to $1,027.39 per month.  *Hein,* 88 F.3d at 214 n.2.

does not support a cause of action for estoppel, and an estoppel claim is not available if the goal or effect is to modify the plan's terms); *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998)(same).

### b. Plaintiff Cannot Demonstrate Reasonable Detrimental Reliance as a Matter of Fact.

In addition, even if plaintiff in the instant case could state an ERISA estoppel claim, plaintiff's alleged change in position – that is, his alleged reliance – is unreasonable on its face. According to plaintiff, in June 2006, almost two years after Wausau Benefits informed his attorney, Ms. Rossbach, that his long term disability benefits would not be reduced by his workers' compensation award, he and his wife bought a new house, tore it down and secured a $1,073,000 construction loan to build a new house on that property. *See* Facts, ¶61 (Dkt. Entry 20). Plaintiff then sold his previous home in August 2007 and applied the sale proceeds to reduce the construction loan balance to $800,000, which he then converted to a conventional mortgage. *See id.* at ¶62.

That $800,000 mortgage is amortized over thirty years, has a variable rate, and his total repayment obligation is $2,086,221.60, and perhaps higher as the interest rate fluctuates. *See id.* at ¶¶61, 63. Plaintiff's thirty-year mortgage will not be paid in full until 2037, at which time

21

plaintiff will be approximately 81 years of age, *see id.* at ¶64, and his long term disability benefits would have ended **no later than** 15 years earlier when he turned 65.   *See id.* at ¶19.   Of course, those benefits will end sooner than age 65 if he no longer satisfies the IP LTD Plan's disability definition.   *See id.* at ¶¶19, 22.

Plaintiff and his wife made this decision (which is the only decision which plaintiff claims he made based on Wausau Benefits' representation to his lawyer), and secured a $1,073,000 construction loan and $800,000 mortgage when their only sources of income were his long term disability benefits, his workers' compensation benefits and his wife's income, which varied from a high of $135,000 and a low of $83,000.   *See* Facts, ¶65 (Dkt. Entry 20).   Even if plaintiff could otherwise establish the elements of an ERISA estoppel claim, defendants respectfully submit that these discretionary and personal real estate decisions, which plaintiff acknowledges were based in large part on disability income benefits that would definitely end 16 years before the mortgage was paid in full (and perhaps sooner) were unreasonable on their face and cannot support a claim for equitable estoppel under ERISA.

### 3.   "Extraordinary Circumstances"

Finally, plaintiff cannot establish what this Court has described as "the defining element of an equitable estoppel claim

under ERISA - 'extraordinary circumstances.'" *See Gramm v. Bell Atlantic Management Pension Plan*, 983 F. Supp. 585, 591 (D.N.J. 1997), *citing, Kurz v. Philadelphia Electric Co.*, 96 F.3d 1544, 1553 (3rd Cir. 1996). To sustain a claim for equitable estoppel under ERISA, the plaintiff must show "'affirmative acts of fraud or similarly inequitable conduct by an employer' such that it appears that the employer sought to profit at the expense of its employees," *id.,* and, "[n]othing short of demonstrable bad faith, affirmative misrepresentation or concealment of ERISA . . . benefits or rights with knowledge that the participants or beneficiaries might be misled has sufficed to demonstrate the necessary 'extraordinary circumstances.'" *Id., citing, Jordan v. Federal Express Corp.*, 914 F. Supp. 1180, 1191 (W.D. Pa. 1996). Plaintiff cannot satisfy this standard.

The Court's decision in *Gramm* is instructive. In *Gramm*, the plaintiff received a written estimate from his employer of the "Lump-Sum Cash-Out" he would receive if he decided to volunteer for an early exit program. *Gramm*, 983 F. Supp. at 587. His employer subsequently told him that "his 100% cash-out amount had been mistakenly calculated" and was actually almost $55,000 lower than the original representation he received. *Id.* at 588. This Court rejected the plaintiff's equitable estoppel claim finding, *inter alia*, that he failed to demonstrate "extraordinary circumstances." The plaintiff "presented no evidence which

23

supports an inference of bad faith and/or fraudulent conduct on the part of any defendant." *Id.* at 592. The plaintiff failed to offer evidence of "'repeated misrepresentations' by the defendants but rather the recirculation of a single document." *Id.* The Court concluded that, "[i]n short, the miscalculation of [the plaintiff's] 100% cash-out amount was a simple, albeit unfortunate, mistake, which is devoid of any 'extraordinary circumstances.'" *Id.*[10]

The same result obtains here. Plaintiff relies on a single representation by Wausau Benefits to his lawyer and can present no evidence supporting an inference of bad faith or fraudulent conduct on the part of any of the defendants (or Wausau Benefits for that matter). Nor is there any evidence that any of the defendants (or Wausau Benefits for that matter) "sought to profit at the expense" of plaintiff, which is another factor in the "extraordinary circumstances" analysis. *See Kurz*, 96 F.3d at 1553. Indeed, such an argument that defendants (or Wausau Benefits) were motivated by bad faith or profit would be illogical because the mistake not to offset plaintiff's long term disability benefits actually resulted in the IP LTD Plan **overpaying** plaintiff benefits. As the Third Circuit has

---

[10]This Court in *Gramm*, 983 F. Supp. at 590-91, also concluded that the plaintiff's alleged reliance was not "reasonable" because the alleged misrepresentation he received in a written report from his employer's actuary regarding his retirement benefit was contrary to the ERISA plan's terms and provisions.

recognized, "an alleged misrepresentation that went beyond the terms of the plan at issue did not 'colorably' present 'extraordinary circumstances.'" *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1165 n.10 (3rd Cir. 1990). Plaintiff, therefore, has failed to state a claim for equitable estoppel under ERISA and his Complaint should be dismissed.

## III. Plaintiff's Remaining Arguments are Based on a Flawed Understanding of ERISA and/or Distortions of the Undisputed Record Evidence.

### A. Plaintiff's Demand for a "Heightened Standard of Review" is Erroneous as a Matter of Law and Fact.

Plaintiff contends that "[t]he Court must review the Plan Administrator's decision to overturn Wassau's [sic] decision with increased scrutiny because this case presents a conflict of interest, procedural irregularities, and an act of bad faith by defendants." *See* Plaintiff's Memorandum, p. 10, 10-16 (Dkt. Entry 23)(discussing the various ERISA standards of review and the ERISA claims procedures). Plaintiff's argument is based on a flawed understanding of ERISA and misrepresentations of the undisputed record.

As demonstrated below, the ERISA claims regulations on which plaintiff relies do not apply and his discussion of alleged conflicts of interest, procedural irregularities and bad faith are irrelevant for several reasons, including the fact that, despite being invited to do so many months before he filed suit, plaintiff has never filed a claim for ERISA plan benefits. Furthermore, plaintiff's arguments regarding alleged "procedural irregularities" and "bad faith" are based on distortions of the undisputed record.

### 1.   Alleged Conflict of Interest

Plaintiff devotes considerable time and attention to his argument that "this Court must raise the standard of review and afford Defendant's decision less deference" because the IP LTD Plan operates under a conflict of interest.   *See* Plaintiff's Memorandum, p. 13, 10-13 (Dkt. Entry 23). Plaintiff alleges that a conflict of interest exists because International Paper both funds the plan benefits and makes benefit decisions.   *Id.* Plaintiff is wrong on the law and the facts.

First, the Court never gets to the conflict of interest argument because the conflict of interest argument relates to how the Court should apply the relevant standard of review (arbitrary and capricious, or *de novo*) in evaluating a plan administrator's decision to deny ERISA plan benefits.   *See Pinto,* 214 F.3d at 382-83.   The Court never gets to this analysis here because plaintiff has refused to file a claim for ERISA plan benefits.[11]

Second, even if any alleged conflict of interest were an issue, plaintiff ignores the Supreme Court's decision in *Metropolitan Life Ins. v. Glenn,* ___ U.S. ___, 128 S. Ct. 2343 (2008).   Contrary to plaintiff's view that "this Court must **raise the standard of review**," *see* Plaintiff's Memorandum, p. 13 (Dkt.

---

[11]Because plaintiff has never filed a claim, the Plan Administrator has never made a decision, not to mention a final decision on that claim.   *See supra* at 7-13.

Entry 23), the Supreme Court has made clear that even when an inherent conflict of interest exists, this does **not** "impl[y] a change in the **standard** of review." *Glenn*, 128 S. Ct. at 2350 (emphasis in original). Rather, when they exist, "conflicts are **but one factor** among many that a reviewing judge must take into account" when reviewing an adverse benefit decision pursuant to the abuse of discretion or arbitrary and capricious standard of review. *Id.* at 2351 (emphasis added).[12]

### 2.  Alleged "Procedural Irregularities"

Plaintiff also contends that "[t]his Court must increase the scrutiny further, because, in addition to conflict of interest, procedural irregularity existed in this case." *See* Plaintiff's Memorandum, p. 13, 13-15 (Dkt. Entry 23). Once again, plaintiff is wrong on the law and the facts.

First, plaintiff contends that, "[i]f any offset was to be taken, it was up to the third party administrator to make this call" and it was improper for International Paper "to intervene" and overrule Wausau Benefits' failure to apply the offset. *Id.* at 14. As demonstrated above, this is clearly erroneous based on the undisputed facts. *See supra* at 7-13. Only the Plan Administrator has the power to interpret the IP LTD Plan's

---

[12]Plaintiff does not dispute the fact that, based on the language of the IP LTD Plan, and the grant of discretion therein, the abuse of discretion or arbitrary and capricious standard of review would apply to any adverse benefit decision in this case. *See supra* note 4.

provisions, and Wausau Benefits did not have the authority to interpret or deviate from those provisions. *Id. See also* Facts, ¶¶5-10 (Dkt. Entry 20).

Plaintiff's reliance on the Third Circuit's decision in *Kosiba v. Merck & Company*, 384 F.3d 58 (3rd Cir. 2004), is misplaced. In *Kosiba*, an LTD Plan Administrator, which had retained a third party claim administrator to administer claims for benefits, "intervened" in the claimant's final appeal and requested that the claimant undergo an additional medical examination and designated the physician who would perform the examination. At the time of the request, "every piece of evidence" in the claimant's file, including the medical records and a Social Security Disability award, "supported [the claimant's] contention that she was disabled." *Id.* at 67. Based on the foregoing, the Court concluded that "the circumstances under which [the Plan Administrator] made this request necessarily raise an inference of bias." *Id.*

None of those circumstances or reasons for concern exist here. After first being informed of Wausau Benefits' error on November 29, 2007, International Paper simply informed Sedgwick, the IP LTD Plan's third party claims administrator, that the error must be corrected. *See* Facts. ¶¶47-50 (Dkt. Entry 20). Sedgwick did so by notifying plaintiff by letter dated December 3, 2007. *See* Facts. ¶¶49-50 (Dkt. Entry 20).

In fact, plaintiff's reliance on the Third Circuit's analysis in *Kosiba* is quite curious because it actually supports defendants' position in this case and illustrates the folly in plaintiff's position in this case. For example, *Kosiba* underscores again that the proper venue for plaintiff's claim was the IP LTD Plan claim procedures, and confirms that plaintiff's claim should be dismissed because he ignored and refused to exhaust those procedures.

In addition, the Court concluded in *Kosiba* that, although the Plan Administrator had "delegated" claim processing to a third party, the Plan Administrator, like the IP LTD Plan, had retained for itself the authority to make the final claim decision (and the final decision regarding how the claim was to be processed). *See Kosiba,* 384 F.3d at 67 (recognizing that the Plan Administrator "surely has the authority under the plan to require such an exam"). The Court rejected the very argument plaintiff makes here – that it was somehow improper for the Plan to "intervene" in the claim process – because it had the ultimate authority to make the claim decision. *Id.* at 66-68.

Second, plaintiff alleges that International Paper was aware in **2005** that no offset was taken. *See* Plaintiff's Memorandum, p. 14 (Dkt. Entry 23)(plaintiff alleging without foundation in fact that International Paper in 2005 that no offset had been taken). He contends that Wausau Benefits made International Paper aware

of this in a December 2005 e-mail message to Beth Strong, a benefits analyst in the Office of the IP LTD Plan Administrator. *Id.* at 19 n.4 (Dkt. Entry 23). This is a blatant misrepresentation of the record.

Contrary to plaintiff's unsubstantiated allegation, the undisputed documentary and testimonial evidence confirms: (a) that the December 2005 e-mail message on which plaintiff relies was not related to plaintiff (it does not even mention plaintiff); and (b) that Wausau Benefits **never** informed International Paper or the IP LTD Plan Administrator that it was not offsetting plaintiff's long term disability benefits by his workers' compensation award. *See* Defendants' Supplemental Statement of Material Facts Not in Dispute Pursuant to L. Civ. R. 56.1(a) (hereinafter "Supplemental Facts"), ¶¶1-6, which is being filed contemporaneously herewith. International Paper and the IP LTD Plan administrator did not become aware of Wausau Benefits' error until November 29, 2007, when Sedgwick brought it to their attention. *Id.* Plaintiff improperly ignores or misrepresents the record by suggesting otherwise.

Third, plaintiff contends that International Paper's notice to him in December 2007 that it was going to apply the offset was "grossly untimely" under the ERISA claim procedures, *id.* at 14-15 (discussing 29 C.F.R. §2560.503-1), and that the IP LTD Plan cannot apply the offset now because the ERISA plan appeal

30

procedures are "no longer available" to the IP LTD Plan.  *Id.* at 17 n.3.  *See also id.* at 23-25.  These arguments also are without merit.

Contrary to plaintiff's contention, the ERISA claims procedures do not apply because plaintiff has never filed an ERISA claim.[13]  In addition, as is confirmed by a simple and plain reading of the regulations on which plaintiff relies, the claim and appeal process in the ERISA claims regulations are available only to "claimants" such as plaintiff, not to the ERISA Plan or the ERISA Plan Administrator.  By their express terms, the ERISA claims procedure regulations set forth "the minimum requirements for employee benefit plan procedures pertaining to **claims for benefits by participants and beneficiaries (hereinafter referred to as claimants)**."  *See* 29 C.F.R. §2560.503-1(a)(emphasis added).  *See also* 29 C.F.R. §2560.503-1(e)(defining a "claim for benefits" as "a request for a plan benefit or benefits made by a claimant"); 29 C.F.R. §2560.503-1(h)(limiting appeals to "a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination").  As a result, even

---

[13]Contrary to plaintiff's assertion, notifying the third-party claim administrator that he had received workers' compensation benefits is not a claim for benefits under the IP LTD Plan or the ERISA claim regulations.  *See* Plaintiff's Memorandum, p. 15 (Dkt. Entry 23).  A "claim" is "a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims."  *See* 29 C.F.R. §2560.503-1(e).

if they had known about it, neither the IP LTD Plan nor the Plan Administrator (not to mention International Paper) could have "appealed" Wausau Benefits' erroneous decision not to offset plaintiff's long term disability benefits by his workers' compensation award, as suggested by plaintiff.[14]

### 3.   Alleged "Bad Faith"

Finally, plaintiff contends that "[t]he standard of review must increase yet again, because William Webb acted in bad faith when he determined that Wassau's [sic] Decision could be set aside simply because Plaintiff may have lacked proof *'in writing.'"* *See* Plaintiff's Memorandum, p. 15 (Dkt. Entry 23). This too is a blatant misrepresentation of the record.

Mr. Webb testified that he and other members of the escalation committee wanted to know if Wausau Benefits had ever sent a letter to plaintiff or his counsel regarding the offset issue because they wanted to know what, if any explanation, Wausau Benefits had provided to them. *See* Webb Deposition at p. 33-39 (Steen Supp. Cert., Exh. 2). Contrary to plaintiff's unsubstantiated assertion, "proof in writing" was irrelevant; there was no doubt in the committee members' minds that the

---

[14]Plaintiff's reliance on *Ott v. Litton Industries*, 2005 WL 1215958 (M.D. Pa. 2005), is misplaced. *See* Plaintiff's Memorandum, p. 14-15 (Dkt. Entry 23). In that case, unlike plaintiff in the instant case, the claimant filed a claim pursuant to the ERISA claims procedures. That is why the claims procedures (and their concomitant deadlines) applied there, but do not apply here.

offset should be taken, but they wanted to ensure that they had all of the information available regarding this issue. *Id.* This is how a fiduciary is supposed to act.

Plaintiff's statement that, "[u]nfortunately for Mr. Webb, Plaintiff has the internal communications related to the handling of his claim" is bizarre. *See* Plaintiff's Memorandum, p. 16 (Dkt. Entry 23). Plaintiff has those documents because defendants produced them to him. Moreover, International Paper and Sedgwick have never tried to hide the fact that they were aware that Wausau Benefits did not take the offset; in its initial December 3, 2007 letter to plaintiff they informed plaintiff that they were aware that Wausau Benefits did not offset these benefits. *See* Facts, ¶49 (Dkt. Entry 20). Plaintiff is entitled to reasonable inferences from undisputed facts; he is not entitled to heap speculation on top of conjecture based on distortions of the undisputed record.

* * *

As demonstrated above, plaintiff's arguments regarding alleged conflicts of interest, procedural irregularities and bad faith conduct are based on a fundamental misunderstanding of ERISA and are contradicted by the undisputed record. Plaintiff's resort to the *de novo* standard of review and his demand that the Court "should not accord [defendants'] arguments on Plan

33

interpretation much weight at all," *see* Plaintiff's Memorandum, p. 16 (Dkt. Entry 23), therefore, are without merit.[15]

### B.    Plaintiff's Discussion of the So-Called Disability "Onset Date" is Irrelevant.

Plaintiff contends that, "[i]n 2004, **defendants** seem to have concluded that the discrepancy between the onset of the injury date (March 2001) and the end of work (June 2001) precluded defendants from taking an offset." *See* Plaintiff's Memorandum, p. 19 (Dkt. Entry 23)(emphasis added).[16]  According to plaintiff, his records then were "doctored" to justify "tak[ing] the offset after all." *See* Plaintiff's Memorandum, p. 19 (Dkt. Entry 23).

This allegation is irresponsible and irrelevant.  First, as plaintiff well knows, in 2004, only Wausau Benefits, not the "defendants" in this action were involved in the offset issue. Second, it is undisputed that the onset date of plaintiff's disability is irrelevant.  In response to plaintiff's counsel's questions, International Paper's 30(b)(6) witness testified as follows:

> Q.   One moment.   In your interpretation of the IP long-term disability plan, does the onset of the disability date have any relevance as to whether an offset will be taken for workers' compensation payments?

---

[15]Even under the *de novo* standard of review, it is clear from a plain reading of the IP LTD Plan that the offset at issue was required. *See supra* at 17-20.

[16]Plaintiff refers to "Exhibit 9:  Luppino 339," but his brief includes no such exhibit.

A.    No.

*See* Strong Deposition at p. 69 (Steen Supp. Cert., Exh. 2).    In response to plaintiff's counsel's questions, Sedgwick's 30(b)(6) witness agreed:

> Q.    Does the determination as to whether the loss date was 3/1/01 or 6/2/01 make any difference as to your analysis as to when the offset should be taken?
>
> A.    No, I mean, either way – if either one of those dates was used, the offset would still be applicable.

*See* Gomez Deposition at p. 34-35 (Steen Cert., Exh. 5).    Based on this undisputed testimony, plaintiff's arguments regarding the disability onset date are a classic red herring.

### C.    **Plaintiff's Resort to the Doctrine of *Contra Proferentem* is Unavailing.**

Plaintiff asserts that the Court "should apply the doctrine of *contra proferentem* and construe any ambiguous language of the Plan in favor of Plaintiff."    *See* Plaintiff's Memorandum, p. 17 (Dkt. Entry 23).    There are at least two problems with this argument.

First, the doctrine of *contra proferentem* is a tool used to interpret ambiguous language, *see Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257-58 (3rd Cir. 1993), but here, plaintiff has not and cannot identify any ambiguous provision of the IP LTD Plan.    For example, the coordination of benefits provision on

which the offset is based is clear and unambiguous. *See supra* at 17-20.[17]

Second, the cases on which plaintiff relies, *see* Plaintiff's Memorandum, p. 17 (Dkt. Entry 23), pre-date the Supreme Court's decision in *Glenn*, in which the Court held that it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules." 128 S. Ct at 2351. The Fourth Circuit has held that, for this reason, the Supreme Court's decision in *Glenn* forecloses the use of *contra proferentem* to limit the discretion an ERISA plan's language gives to the plan administrator to interpret disputed or doubtful terms. *See Carden v. Aetna Life Ins.*, 559 F.3d 256, 260-61 (4th Cir. 2009). It does not appear that the Third Circuit has revisited the issue of whether the doctrine applies post-*Glenn*.

### D.    Plaintiff's Laches "Defense" is Without Merit.

Without any real explanation or analysis, plaintiff also contends that the doctrine of laches applies to his claim. *See* Plaintiff's Memorandum, p. 29 (Dkt. Entry 23). According to plaintiff, "it is irrelevant as to whether **International Paper** made the right or the wrong decision in 2004," *id*. at 29 (emphasis added), and somehow International Paper should be

---

[17]Indeed, plaintiff appears to concede that the plan documents are "clear" and unambiguous. *See* Plaintiff's Memorandum, p. 21 (Dkt. Entry 23).

precluded from correcting Wausau Benefits' error "long after *International Paper* had assured plaintiff that the offset would not be taken." *Id.* at 30 (emphasis added). Of course, International Paper made no such decision and made no such assurances in 2004; Wausau Benefits did and, once again, plaintiff misstates the undisputed record evidence.

Furthermore, plaintiff does not explain how the equitable defense of laches, *see Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 134 (3rd Cir. 2000), applies to his affirmative claim for relief. Even if the doctrine did apply, plaintiff does not analyze or explain how the correction of Wausau Benefit's October 2004 error in December 2007 constitutes "inexcusable delay." *Id.* Indeed, the doctrine of laches generally follows the statute of limitations, *id.*, and, here, the error was corrected well before the applicable six-year statute of limitations expired. *See Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3rd Cir. 1992); *Klimowicz v. Unum Life Ins. Co.*, 296 Fed. Appx. 248, 250 (3rd Cir. 2008).

Nor does plaintiff demonstrate how the correction of the error would prejudice him to the degree necessary to invoke the doctrine of laches. *See Holmes*, 213 F.3d at 134. As demonstrated above, plaintiff's reliance on Wausau Benefits' error was not reasonable or otherwise actionable. *See supra* at 17-22. The purpose of the IP LTD Plan is to protect plan participants from a

loss of income. *See* IP LTD Plan Summary Plan Description at Luppino 0163 (appended as Exhibit B to the Strong Affidavit (Steen Cert., Exh. 3). By correcting for Wausau Benefits' error, the IP LTD Plan leaves plaintiff in precisely the same position he would have been in had the error not occurred; nothing more and nothing less. Plaintiff, on the other hand, requests a benefit which is beyond that to which he is entitled under the Plan.

### Conclusion

Based on the foregoing, defendants, by counsel, request the Court to enter an Order denying plaintiff's motion for partial summary judgment; and granting such other relief as the Court deems just and proper.

Day Pitney LLP
Attorneys for Defendants
Sedgwick Claims Management
Services, Inc., International
Paper Company and William L.
Webb

By: s/Michael T. Bissinger
MICHAEL T. BISSINGER
A Member of the Firm

McGuireWoods LLP
Attorneys for Defendants
Sedgwick    Claims    Management
Services,   Inc.,   International
Paper  Company  and  William  L.
Webb

By:  _____
          Bruce M. Steen
          A Member of the Firm

DATED: November 23, 2009