NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VINCENT LUPPINO, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 08-CV-5315 (DMC-MF) |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., *et al*. | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon cross-motions by Vincent Luppino ("Plaintiff") and Sedgwick Claims Management Services, Inc., International Paper Company and William L. Webb, as an individual and as an agent for Sedgwick Claims Management Services, Inc., (collectively, "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, this Court concludes Plaintiff's motion for summary judgment is **denied**, and Defendants' motion for summary judgment is **denied in part** and **granted in part,** and Defendants' motion to strike Plaintiff's certifications submitted in support of this motion is **granted.**

**I.    BACKGROUND**

Plaintiff was a long-term employee with Union Camp Corporation, ultimately acquired by International Paper, Inc. in 1999. While an employee of Union Camp Corporation, Plaintiff suffered an on the job injury in 1997. In March 2001, Plaintiff suffered an on the job back injury. Plaintiff

continued to work on light duty until June 2001. As of June 2001, Plaintiff was no longer able to perform his job. Pursuant to the International Paper Company Long-Term Disability Plan ("IP Plan"), an employee welfare benefit plan maintained pursuant to the Employee Retirement Income Security Act ("ERISA") of 1974, Plaintiff was awarded long-term disability benefits. Plaintiff also filed prevailing claims for Social Security Disability Income Benefits ("SSDI") as well as a claim for workers' compensation. On November 16, 2004, an Administrative Law Judge ("ALJ") granted Plaintiff social security disability benefits for the period October 1, 2001 through April 30, 2003. Pursuant to the workers' compensation claim, on March 10, 2004 by way of settlement, Plaintiff was awarded a lump sum of $186,165.00 and a weekly disbursement of $591.00.

Wausau Insurance Companies (the "Claims Administrator") was apprised of the existing awards. The Claims Administrator concluded that the IP award was to be offset against the SSDI award. Accordingly, Plaintiff issued a check in the amount of the full offset required with respect to the SSDI award. By way of letter, dated July 21, 2004, Plaintiff was requested to submit information concerning the workers' compensation settlement for purposes of calculating any offset or overpayment. Further, Plaintiff's agent, Elise Rossbach, Esq., inquired as to whether an offset would be taken against the IP Plan benefits in light of these other awards. On October 6, 2004, in a telephone conversation with Ms. Rossbach, the Claims Administrator represented that the IP Plan would not offset the IP award against the workers' compensation award.

On April 1, 2006, the Claims Administrator was replaced by Sedgwick Claims Management Services, Inc. (the "New Claims Administrator") On September 10, 2007, at the direction of the Plan Administrator, International Paper Senior Vice President - Human Resources, the New Claims Administrator changed the loss date on Plaintiff's file from June 2, 2001 to March 1, 2001. By way

of email, Carl Walker, Disability Specialist II of the Sedgwick CMS Irving IP Disability Office, indicated that "[i]n 2004, Wausau determined that the WC benefit was not an offset because his injury date occurred in March 2001 and not in June of 2001 when EE was continuously Disabled. . . Ms. Rosshach [sic] was then notified by telephone that they would not be offsetting with the WC benefits." In an email, dated November 30, 2007, Benefits Analyst - Employee Benefits of International Paper Headquarters, William L. Webb ("Mr. Webb") directed that the offset and collection of overpayment proceed in the absence of any written representation advanced to Plaintiff indicating the contrary. By way of letter, dated December 3, 2007, Plaintiff was informed, "[o]n review of your LTD claim, it has been determined that the Workers' Compensation benefits that you have received and are receiving should have been offset from your LTD claim."

In a deposition conducted on August 18, 2009, Mr. Webb represented that the onset date for purposes of triggering disability benefits under the IP Plan is the date the employee actually went on disability, not the date an employee goes on light duty. Further, Mr. Webb explained that his role as a Benefits Analyst includes escalation requests and answering ERISA appeals. Mr. Webb represented that an escalation request is not an appeal. Mr. Webb indicated that there was not exactly a formal policy or procedure in place for addressing escalation requests. However, Mr. Webb brought the escalation request to the attention of other personnel at a team meeting conducted regularly three times a week. At the meeting concerning this escalation request, Mr. Webb, his supervisor, Jim Renfro, Sharon Berger, Beth Strong and Brenda Tucker were present. Mr. Webb testified that the purpose in addressing Plaintiff's case at the meeting was to confirm that an offset should be instituted.

In the course of that deposition, Mr. Webb explained that before an IP employee may appeal,

that individual must have a claim. If such a claim exists, the IP employee files that claim with the Claims Administrator. If the Claims Administrator denies the claim, then the IP employee may appeal to the Plan Administrator. However, the appeal will not go directly the IP Senior Vice President - Human Resources. Instead, the claim will be addressed by an agent in that department. The result of this appeal is subject to review by the disability review committee. Mr. Webb also testified that the only way to get a final decision by the Plan Administrator is to file a claim. However, Mr. Webb could not explain when, or if, in the absence of a claim and appeal, a favorable award to an IP employee would be final. Mr. Webb testified that he has never received a claim concerning a favorable award and decision not take an offset.

On October 30, 2008, Plaintiff filed a Complaint in this Court. Count I of the Complaint asserts a claim for non-payment of benefits pursuant to 29 U.S.C. § 1132. Count II of the Complaint asserts a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132. Count III is titled breach of contract, state law claim, but appears to assert a claim for equitable estoppel. Count III has been addressed by the parties under both theories. On October 26, 2009, Defendants filed a motion for summary judgment. On October 27, 2009, Plaintiff filed a cross-motion for summary judgment. On November 11, 2009, Defendants filed a motion to strike Plaintiff's certifications filed in support of the cross-motion for summary judgment.

**II.     LEGAL STANDARD**

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009). However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less

5

effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

### III.   DISCUSSION

   A.   Scrutiny

Plaintiff argues that this Court must apply heightened scrutiny, and limit deference to the IP Plan Administrator, in addressing the decision to override a previous determination to administer benefits without offsetting a workers' compensation award against those benefits. Plaintiff asserts that an inherent conflict of interest exists, because the Plan Administrator is the entity that both funds and administers the plan. As a consequence of this conflict of interest, procedural irregularity and bad faith, the application of heightened scrutiny is required. By contrast, Defendants assert that heightened scrutiny is inapplicable in the instant matter given that Plaintiff never filed a claim for benefits. To the extent a conflict of interest is present, Defendants contend that a conflict of interest is a single factor among many considered by the Court.

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." McLean v. Old Dominion Freight Line, Inc., 2007 U.S. Dist. LEXIS 45679, *6 (D.N.J. June 22, 2007) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). "Where the plan affords the administrator discretionary authority," the arbitrary and capricious standard applies, meaning that "an administrator's decision must be affirmed unless it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Id. (citing Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d

6

40, 45 (3d Cir. 1993)). "Prior Third Circuit case law 'referenced an 'arbitrary and capricious' standard of review[,]' as applicable to cases where discretionary authority is vested in the plan administrator." Kao v. Aetna Life Ins.Co., 647 F. Supp. 2d 397, 410 n.20 (D.N.J. 2009) (quoting Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 526 n.2 (3d Cir. 2009)). "The Supreme Court recently described the proper standard as 'abuse of discretion.'" Id. (internal citation omitted); Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). "[A]t least in the ERISA context, these standards of review are practically identical." Id. The Court is presented with whether "a 'heightened' form of deferential review, under the 'sliding scale' approach to conflicts of interest articulated in Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377 (3d Cir. 2000)" applies. Id. "The 'sliding scale' approach, however, is no longer good law in the wake of the Supreme Court's decision in Metropolitan [ ]." Id. "Instead, the Court will 'consider any conflict of interest as one of several factors in considering whether [there is an] abuse[ ] [of] discretion." Id. Arguably, the same standard applies with respect to allegations of procedural irregularities and bad faith.[1] Therefore, as a matter of law, to the extent that a conflict of interest, a procedural irregularity or evidence of bad faith is present, the Court is required to apply the abuse of discretion standard as articulated by the United States Supreme Court. With respect to the application of heightened scrutiny, Plaintiff's motion is **denied.**

B.     Exhaustion of Administrative Remedies

Defendants contend that, in claiming a right to benefits pursuant to 29 U.S.C. § 1132, Plaintiff

---

[1] As a consequence, Plaintiff's argument for application of the contra proferentem doctrine is inapplicable because as stated by Plaintiff that doctrine is reserved for cases in which a de novo standard of review applies. See Heasley v. Belden & Blake Corp., 2 F.3d 1249 (3d Cir. 1993).

is required to exhaust administrative remedies before proceeding in this Court. Defendants also allege that Plaintiff was afforded an opportunity to file a claim consistent with the administrative procedures outlined in the IP Plan. Plaintiff asserts that the administrative process is inapplicable because the decision of the former Claims Administrator is final and binding upon Defendants.

Article VII, Section 7.01, General Claims Procedures provides the following:

> Except as hereinafter provided, the provisions of this Article shall apply to every claim for a benefit under the Plan regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred.

In addition, Section 7.12, Legal Remedy, further provides, "[b]efore pursuing a legal remedy, a claimant shall first exhaust all claims, review, and appeals procedures required under the Plan."

Pursuant to Article IV, Section 4.03, Coordination with Other Benefits,

> [i]f the Covered Employee is eligible to receive other sources of disability income, those sources will reduce long-term disability benefits payable under the Plan.
>
> By way of example, and not by way of limitation, other sources of disability income include:
>
> A. Social Security disability benefits;
> B. Social Security retirement benefits;
> C. Amounts paid under the Company's retirement plan or any other Company-sponsored plan or program;
> D. Workers' Compensation benefits;
> F. Amounts paid under occupational disease laws; and
> G. Amounts paid under automobile no-fault insurance laws.
>
> If disability payments from other sources are delayed and paid to the Covered Employee retroactively in a lump-sum amount, the Covered Employee will be required to reimburse the Plan for the amount of any excess long-term disability benefits such Covered Employee may have received.

Moreover, Article VIII, Section 8.05 Right to Offset Future Payments indicates,

> [i]n the event a payment or the amount of a payment is made erroneously to an individual, the Plan shall have the right to reduce future payments payable to or on behalf of such individual by the amount of the erroneous or excess payment. This right to offset shall not limit the right of the Plan to recover an erroneous or excess payment in any other manner.

By way of letter, dated June 2, 2008, Steven Gaetcher, Esq., an authorized representative of Plaintiff, was advised that Plaintiff had "a right to file a claim should he disagree with a reduction in his LTD benefits. Any claim should be in writing and addressed to:"

> Senior Vice President - Human Resources
> c/o Employee Benefits Department
> Attn: William Webb
> International Paper
> 6400 Poplar Drive
> Memphis, TN 38197

Pursuant to this letter, Mr. Gaetcher was also informed that "Mr. Luppino has a right to bring a civil action under Section 502(a) of ERISA if he files a claim and his claim is denied following review and exhaustion of administrative appeal rights."

"An ERISA beneficiary may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan.'" Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249-51 (3d Cir. 2002) (quoting 29 U.S.C. § 1132). "ERISA itself does not contain an exhaustion requirement, but it does require covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied." Karpiel v. Ogg, Cordes, Murphy & Ignetzi, 2008 U.S. App. LEXIS 24626,

9

*3 (3d Cir. Oct. 28, 2008); see Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir. 2007). "Accordingly, courts have long held that an ERISA plan participant must exhaust the administrative remedies available under the plan before seeking relief in federal court unless the participant can demonstrate that resort to the plan remedies would be futile." Id.; see Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249-51 (3d Cir. 2002). "Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally." Harrow, 279 F.3d at 250 (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990)). Moreover, "[f]ailure to satisfy a condition should be excused if the other party thwarted fulfillment of the condition." Epright v. Environmental Resources Mgmt., 81 F.3d 335, 341 (3d Cir. 1996).

     Indeed, the administrative mechanism allegedly made available to Plaintiff requires that Plaintiff submit a claim to the very same individual, Mr. Webb, who investigated and subsequently, directed a benefit retraction. Moreover, to the extent that Defendants allege Plaintiff failed to file a claim in accordance with administrative procedure, Defendants directed Plaintiff to forward the claim to an individual charged with the responsibility of addressing appeals. Presumably, Defendants were treating the matter as though a claim had already been filed. Otherwise, Defendants appear to be non-compliant with the administrative procedure that directs claims to be addressed by the Claims Administrator, not the Plan Administrator. The Court finds this inherently suspect and concludes that administrative review would have proven futile in the instant matter. Therefore, Defendants request

for summary judgment for failure to exhaust administrative remedies is **denied**.[2]

        C.       Finality of Decision

Plaintiff asserts that the decision not to offset the IP Plan benefits with the workers' compensation award was final and binding pursuant to Section 6.04, Finality of Decisions, recited in the foregoing subsection. Although Defendants concede that a representation was made by the Claims Administrator, Defendants assert that they are not bound by the representations of the Claims Administrator, that such representation was made in error and that pursuant to Section 6.04, only representations made by the Plan Administrator are binding.

"We have determined that when an individual acts with apparent authority to determine an employee's status in relationship to a benefit plan, the plan fiduciary can be responsible for the individual's material misstatements." Pell v. E.I. DuPont De Nemours & Co., 539 F.3d 292, 301 (3d Cir. 2008) (citing Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 989 (3d Cir. 1995) (the doctrine of apparent authority, which "(1) results from a manifestation by a person that another is his agent and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized."). "For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal *if knowledge of the fact is material to the agent's duties to the principal*, unless the agent (a) acts adversely to the principal as stated in § 5.04, or (b) is subject to a duty to another not to disclose the fact to the principal." Huston v. P&G Paper Prods.Corp., 568 F.3d 100, 106 (3d Cir. 2009) (citing

---

[2] Notably, administrative remedies are also excused where a viable breach of fiduciary duty claim exists "[w]hen the facts alleged [ ] present a breach of fiduciary duty claim that is independent of a claim for benefits." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 254 (3d Cir. 2002).

Restatement (Third) of Agency § 5.03 (2006)).  "The scope of an agent's duties delimits the content of knowledge that is imputed to the principal." Id. "[T]o justify imputation, the knowledge must also be material--i.e., important or significant--to the employee's duties to the employer." Id.

Pursuant to Article VI, Section 6.04, Finality of Decisions:

> The Plan Administrator shall have full power, authority and discretion to enforce, construe, interpret and administer the Plan.  All decisions and determinations of the Plan Administrator with respect to any matter hereunder shall be conclusive and binding on a Covered Employee and all other interested parties.

However, the IP Plan does not provide a mechanism for finalizing favorable decisions awarding benefits in the absence of a claim and appeal.

Pursuant to Section 2.11, Plan Administrator is defined as "the person(s) authorized and responsible for managing and directing the operating and administration of the Plan."  In accordance with Section 6.02, Plan Administrator's Duties, "the Plan Administrator shall have the duty to manage the operation and administration of the Plan."  Further, pursuant to Section 6.03, Plan Administrator's Powers, the Plan Administrator is vested with the authority to "engage the services of such person(s) and entity or entities as it deems reasonably necessary or appropriate in connection with the administration of the Plan[.]"  Consistent with that provision, under Section 7.03, Claims Administration, the Claims Administrator is charged with "the duty to receive and review claims for benefits under the Plan, to determine what amount, if any, is due and payable under the terms and conditions of the Plan, and to make appropriate disbursements of benefit payments to persons entitled thereto."  Furthermore, pursuant to Section 2.02, the Claims Administrator is defined as "the person(s) or entity (or entities) authorized and responsible for receiving and reviewing claims for benefits under the Plan; determining what amount, if any, is due and payable; making appropriate disbursements to

persons entitled to benefits under the Plan; and reviewing and determining denied claims and appeals." Moreover, the fact that the Plan Administrator is the only individual or business entity vested with the authority to terminate the Claims Administrator further demonstrates the agency relationship between the Plan Administrator, operating as principal, and the Claims Administrator, operating as agent. Therefore, the Plan Administrator is imputed with knowledge of the representation made to Plaintiff regarding the offset.

However, the IP Plan is silent with respect to the finality of decisions granting favorable awards that are not the product of the claims and appeal process. Notably,

> [t]raditional rules of contract construction govern a court's review of an employment benefit plan under ERISA. The interpretation of a plan document is typically a question of law. Where the plan is clear and unambiguous, a court must determine its meaning as a matter of law. A plan term is ambiguous when it is subject to reasonable alternative interpretations. Before making a finding concerning the existence or absence of ambiguity, a court considers the plan language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. Case law interpreting a plan term is also relevant to determining its meaning. Rather than applying state insurance law which varies widely among jurisdictions, federal courts look to federal common law when interpreting provisions of plans and policies governed by ERISA.

Precopio v. Bankers Life & Cas. Co., 2004 U.S. Dist. LEXIS 30425, *54 (D.N.J. Aug. 10, 2004) (internal citations omitted). The absence of a provision governing the finality of favorable benefit awards results in ambiguity. In failing to articulate how or when a favorable benefits award is final, Mr. Webb's deposition testimony further underscores the ambiguity arising from benefit awards that have not been subject to review under the claims and appeal process. Therefore, an issue of fact is present concerning whether or not the representation made to Plaintiff constitutes a final decision. On

this ground, summary judgment is **denied.**

  D.  Breach of Contract/Equitable Estoppel

Count III of the Complaint is titled Breach of Contract, state law claim, but appears to assert a claim for equitable estoppel. Citing Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3d Cir.2001), Defendants argue that Plaintiff's purported breach of contract claim is preempted by ERISA. Further, to the extent that the breach of contract claim may be construed as an equitable estoppel claim pursuant to ERISA, Defendants contend that this claim fails. Plaintiff's brief in opposition fails to address the viability of a breach of contract claim in the face of potential preemption by ERISA.

  1.  Breach of Contract

Pursuant to 29 U.S.C. § 1144(a), ERISA preempts a state law claim "insofar as [it] may now or hereafter relate to any employee benefit plan." Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989). "The term 'relate to' has been construed broadly. 'A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Id. "ERISA would preempt an action completely only if the defendant established 'that the underlying state action involves the recovery of benefits due under the terms of a plan, the enforcement of rights under a plan or the clarification of the right to future benefits under the plan.'" Mints v. Educational Testing Servs., 99 F.3d 1253, 1256 (3d Cir. 1996). To the extent that Plaintiff asserts a state law claim for breach of contract, this Court concludes that such a claim is preempted by ERISA. Defendants' request for summary judgment on this ground is **granted.**

  2.  Equitable Estoppel

To the extent that the substance of the allegations in Count III may be construed as asserting an

equitable estoppel claim pursuant to ERISA, 29 U.S.C. § 1132 "permits an ERISA beneficiary to recover benefits under an equitable estoppel theory, upon establishing: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the misrepresentation; and (3) extraordinary circumstances." Post v. Kids Peace Corp., 2004 U.S. App. LEXIS 8333, *21 (3d Cir. Apr. 24, 2004) (citing Smith v. Hartford Ins. Group, 6 F.3d 131, 137 (3d Cir. 1993)).

i. Material Misrepresentation

Defendants indicate that the representation made to Plaintiff's former agent, Ms. Rossbach, was in error. However, Defendants contend that "[n]othing in what Wausau Benefits said to Ms. Rossbach 'would mislead a reasonable employee in making an adequately informed decision about [an ERISA plan benefit]." See Fischer v. Philadelphia Electric Co., 994 F.2d 130, 135 (3d Cir. 1993). Moreover, according to Defendants, Plaintiff "made no benefits decision based on what Wausau told his lawyer [sic]." Defendants assert that Plaintiff did not forego a plan benefit, did not make an employment decision or any decision affecting his status as an employee or plan participant.

Materiality concerns "whether 'there [was] a substantial likelihood' that the misrepresentations and omissions 'would mislead a reasonable employee in making an adequately informed retirement decision[ ]' or 'a decision regarding his benefits under the ERISA plan[.]'" Unisys Corp. Retiree Med. Benefits Erisa Litig. v. Unisys Corp., 579 F.3d 220, 232 (3d Cir. 2009) (internal citations omitted). "Whether an affirmative misrepresentation was "material," however, is a 'mixed question of law and fact.'" Id. (In the present context, "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire.)."[A]ny provision of a plan subject to ERISA that establishes a benefit is a material term

15

of the plan." Pell, 539 F.3d at 300. In Pell, the Third Circuit recognized that "[t]he District Court correctly determined that, under our case law, DuPont's representations about Pell's pension benefit calculation date were material." Id. Further, that Court elaborated, "[p]reviously, we have concluded that representations were material where they led an employee to wrongly believe that accidental death and dismemberment insurance was available." As evidenced by Defendants' internal records, the misrepresentation at issue is premised upon a date of loss, or benefit calculation date, and therefore, consistent with the Pell case is material. Moreover, the standard for assessing materiality does not concern whether a Plaintiff was actually misled in executing a retirement or benefit decision, but whether a Plaintiff would be misled in making such a decision. Therefore, a reasonable employee in Plaintiff's circumstances would be misled with almost four years of payment distributed consistent with an affirmative representation that no offset would be taken.

      ii.  Detrimental Reliance

Defendants appear to contend that detrimental reliance is absent because the IP Plan contains a provision regarding the offset of benefits in light of other awards, including workers' compensation and because the Plan reserves "the right to reduce future payments payable to or on behalf of such individual by the amount of the erroneous or excess payment."

"As the phrase 'reasonable and detrimental reliance' implies, in order to prevail, [Plaintiff] must show (1) reasonableness and (2) injury" or detriment. Id. at 301. Defendants contend that an ERISA estoppel claim fails because any representation that contradicts a provision contained in the IP Plan fails as a matter of law pursuant to In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 58 F.3d 896, 902 (3d Cir. 1995). In that case, the Court concluded,

16

> [d]ue to the unambiguous reservation of rights clauses in the summary plan descriptions by which Unisys could terminate its retiree medical benefit plans, the regular retirees cannot establish "reasonable" detrimental reliance based on an interpretation that the [summary plan descriptions] promised vested benefits. The retirees' interpretation of the plans as providing lifetime benefits is not reasonable as a matter of law because it cannot be reconciled with the unqualified reservation of rights clauses in the plans.

Id. at 907 ("Our sister courts of appeals have also rejected estoppel claims because of the presence of unambiguous reservation of rights clauses on the basis that a participant's reliance on employer representations regarding benefits may never be "reasonable" where the participant is in possession of a written document notifying him of the conditional nature of such benefits.").

However, the case at bar neither concerns inconsistent provisions in the IP Plan itself nor a subjective interpretation of those provisions by Plaintiff. Additionally, that case is distinguishable because plaintiffs reliance upon a representation was considered unreasonable where benefits had not actually vested, unlike the instant matter.

This case involves a provision in the Plan permitting, where appropriate, an offset of a benefits award and a provision permitting the Plan to recover benefits erroneously distributed. Further, this case concerns an affirmative representation contrary to those provisions by Defendants' agent who was vested with the authority "to determine what amount, if any, is due and payable under the terms and conditions of the Plan, and to make appropriate disbursements of benefit payments to persons entitled thereto." Moreover, this case concerns an actual manifestation of that representation through the distribution and payment of benefits over the course of almost four years. Therefore, the Court cannot hold that Plaintiff's reliance on an affirmative representation of an agent who is expressly vested with authority to make such determinations under the terms of the Plan is automatically unreasonable,

particularly where a repeated manifestation of this representation occurred over the course of almost four years. An issue of fact is present concerning the reasonableness of Plaintiff's reliance. Summary judgment on this claim is **denied.**[3]

E. Breach of Fiduciary Duty

Defendants contend that Plaintiff fails to assert a viable claim for breach of fiduciary duty because an adequate remedy at law is available pursuant to § 1132(a)(1). Additionally, Defendants assert that William Webb is not the Plan Administrator and, therefore, Mr. Webb does not owe Plaintiff a fiduciary duty. In opposition, Plaintiff asserts a claim for breach of fiduciary duty against Mr. Webb. Plaintiff contends that Mr. Webb had an obligation to administer the Plan properly and that he failed to do so in deciding not to honor a previous determination by the former Claims Administrator.

"ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." Unisys, 579 F.3d at 228 (citing Mertens v. Hewitt Assocs., 508

---

3

Although the Court's inquiry ends here, Plaintiff is also required to demonstrate injury/detriment to satisfy the second prong, and Plaintiff must demonstrate "extraordinary circumstances" to succeed on a claim for equitable estoppel.

"In order to show detriment, or injury, a plaintiff must demonstrate that he relied upon the employer's representations in a way that later led to injury." Pell, 539 F.3d at 303 (citing Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994)). "[C]ase law recognizes that refraining from taking action can constitute detrimental reliance." Id. (Pell relied to his detriment on the pension estimates he received in the 1990s by refraining from taking certain actions. Pell testified that if he had known how his pension would be calculated, he would have explored whether he could return to Consol, get another job with a better pension, or retire sooner and start a consulting business. He was injured because he did not take any of these actions that might have benefitted him.).

"Extraordinary circumstances can arise where there are 'affirmative acts of fraud,' where there is a 'network of misrepresentations . . . over an extended course of dealing,' or where particular plaintiffs are especially vulnerable." Pell, 539 F.3d at 304. In the Pell case, the Third Circuit agreed with the District Court's ruling that "repeated misrepresentations over an extended course of dealings between an employer and an employee are sufficient to demonstrate the existence of extraordinary circumstances, when, as here, it is clear that the employee has been diligent in inquiring into the employer's representations, in seeking clarifications about those representations, and in obtaining reaffirmations of those representations." Id. As underscored by Defendants, "[r]eviewing the applicable precedent of our Court of Appeals, nothing short of demonstrable bad faith, **affirmative misrepresentation** or concealment of ERISA pension benefits or rights with knowledge that the participants or beneficiaries might be misled has sufficed to demonstrate the necessary 'extraordinary circumstances.'"

U.S. 248, 262 (1993)). Accordingly, '[f]iduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." Id. (citing Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1158 (3d Cir. 1990)). "[T]he plan administrator is the entity with the fiduciary obligation to 'control and manage the operation and administration of the plan.'" Taylor, 49 F.3d at 988. "[I]n discharging fiduciary responsibilities, a *fiduciary* with respect to a plan may rely on . . . persons who perform purely ministerial functions for such plan," such as "advising participants of their rights and options under the plan." Id. "[A] plan administrator violates its 'fiduciary obligations owed to the plan participants' when 'those employees on whom plan participants reasonably rely for important information and guidance about retirement" make material misstatements.'" Id. Consistent with that opinion, even a Plan Administrator can be held liable for the representations of a non-fiduciary agent operating with actual authority. Id.

Although Mr. Webb's deposition testimony appears to demonstrate that he was acting with considerable discretionary authority, an issue of fact is present concerning whether the alleged failure to honor the decision of a former Claims Administrator constitutes a breach of fiduciary duty. On this ground, summary judgment is **denied.**

    F.    Motion to Strike

Defendants move to strike portions of Plaintiff's certification submitted in support of its cross-motion for summary judgment. In response, Plaintiff submits that the certifications relate the facts as experienced by Plaintiffs. Upon review, the Court concludes that the certifications submitted violate L. Civ. R. 7.2 and therefore, the certifications are stricken.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's cross-motion for summary judgment is **denied** with respect to Counts I, II and III; and Defendants' cross-motion for summary judgment is **denied** with respect to Counts I and II, **granted in part** to the extent that Count III has been treated by the parties as a breach of contract claim and **denied in part** to the extent that Count III has been treated by the parties as an equitable estoppel claim**.**  Defendants' motion to strike Plaintiff's certifications pursuant to the cross-motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

<div style="text-align:right">S/ Dennis M. CAvanaugh<br>Dennis M. Cavanaugh, U.S.D.J.</div>

Dated:       May   19  , 2010
Original:    Clerk
cc:          All Counsel of Record
             Hon. Mark Falk, U.S.M.J.
             File